The next case this morning is 522-0047, People v. Hilson. Arguing for the defendant appellant is Emily Philpy. Arguing for the state is Pamela Wells. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Are you ready to proceed, counsel? Yes, your honor. Good morning, your honors, counsel. My name is Emily Philpy and I represent Demario Hilson in this matter. Due to the complexity of the second issue and in the interest of time, I plan to focus my remarks this morning on that argument. Of course, I'm happy to answer questions about any of the issues in the briefs. Timing. This case is about time. Well, more specifically, the sequence of the possession of a firearm in relation to the qualifying priors that make up the offense of armed habitual criminal. The statute requires that the state establish that the defendant possessed a firearm and at that time of that possession, he had the two qualifying priors. During this case was instructed about just that. But during deliberations, the jury specifically asked about the timing of the firearm possession, asking, are we deciding did he have possession of the gun at the time of arrest or any time before this arrest? The court gave IPI 3.01 to the jury, instructing that the information states the offense was committed on October 7, 2020. If you find that the offense charge was committed, the state is not required to prove that the offense was committed on the particular date charged. However, IPI 3.01 is contrary to armed habitual criminal statute and the instructions given to the jury about the timing of the possession vis-a-vis the priors. The armed habitual criminal statute requires the state establish a specific sequence for the possession of a firearm after having been convicted of the two priors. In contrast, IPI 3.01 instructs that date of the possession is immaterial. But let me ask you this, counsel. During the trial, the parties stipulated as follows, that on October 7, 2020, the defendant, Demario Hilson, was a convicted felon, having been previously convicted of a combination of two or more of the enumerated felonies set forth in 720 ILCS 5 slash 24 dash 1.7. How does that affect your argument? Well, Your Honor, that goes to the practice. Because giving these conflicting instructions to the jury, the reason this was so prejudicial is because it allowed the jury to find Hilson guilty without establishing the sequence, you know, the timing for armed habitual criminal. But the jurisdiction says previously convicted. Right, but as of the date of the arrest. So when you look at the jury note, the jury note is specifically asking, are we deciding did he have possession of the gun on the time of arrest or any time before the arrest? However, the only facts that the jury knows about the priors comes from that stipulation. And all they know about the sequence is that on the date of arrest, he had the priors. So if the jury were to find that the possession occurred at any time before the arrest, like they asked in their note, then they have no information, no evidence, nothing about the priors and when they occurred vis-a-vis the possession. So that's the big problem is giving IPI 3.01 and saying that the timing of the possession is immaterial. It conflicts with armed habitual criminal. The statute and instructions given there that says no, the sequence is important. The timing of the possession has to occur after the two qualifying priors. But the jury's question did not say date of arrest, it said time of arrest. So they could have been asking, does he have to have possession of the gun immediately at the time the officer arrests him? Or could he have had it that morning when he put the gun in the car or two weeks ago? We don't really know from the jury's question what they're asking, but given the DNA evidence, doesn't it seem more likely that that was not the interpretation of the jury's question? You're right, Your Honor. We don't know what the jury was thinking with that question. All we know is they're asking about the time of arrest or at any time prior. So it could have been a week prior, it could have been 10 years prior. They don't know. And the problem with this issue and with giving IPI 3.01 is now the jury has two conflicting instructions in front of it. And as the Illinois Supreme Court told us in Hartfield, this is presumptively prejudicial under the second because we can never know which instruction the jury followed. We don't know what the jury was thinking, but we do know that if they think that the possession occurred at any time prior to the arrest, like they asked, then there's no evidence about the sequence because the stipulation only says that on the date of the arrest, October 7th, he was a convicted felon having previously been convicted of the two prior felonies. This court can also review this error under the first prong where the evidence was closely balanced. Like in Bailey, the gun was simply underneath the seat under which he sat in a car that didn't belong to him. He was not seen holding or touching the gun. There was no evidence he owned the gun. The gun was not visible. The officers didn't see movements. There were no statements indicating his knowledge or ownership of the gun. The only thing in this case was the DNA, like you've mentioned, but that does not establish when he possessed the gun. The improper jury instruction here could have easily tipped the balance on this case. If the jury followed improper IPI when they were instructed that the timing of the possession is immaterial, then the state never established the sequence of the possession and the priors because the stipulation only stated that on the date of the arrest, he had the prior felonies. Alternatively, this court can review this error where counsel was ineffective for failing to ensure that the jury was properly instructed on the essential elements of armed habitual criminal and to preserve this issue for appeal. For these reasons, I ask that this court remand for a new to vacate Helson's conviction under argument one as argued in the briefs. Thank you. Thank you, counsel. Any questions from the justices? No questions. No questions. Counsel for Appley, you may proceed. Please state your name. My name is Pamela Wells. Good morning, your honors. Counsel, may it please the court. I represent the people of the state of Illinois. The issues here are threefold, and I will actually address each of them briefly. Under the sufficiency of the evidence, you're looking at either constructive or actual possession. And under either theory, it was proven that he possessed it because possession does not have to be shown by actual touching of the illicit materials at the time of arrest. And we know that he actually had possession because of his DNA. That differentiates this case from Bailey, Macias, Hampton, and Tate's relied on by the defendant in this case. Each of those cases pointed out that the defendant had that there was no forensic evidence tying the defendant to the actual illicit materials, which was the case here. In addition, we have the defendant repeatedly pulling his hands back in the car, refusing to get out of the car. Those are furtive motions that would connect him and allow an inference that he had knowledge of that firearm. His explanation that he was calling someone who he had blocked for hours, the supposed owner of this vehicle, and decided to call him at the police are ordering him out of the car and ordering to keep his hands out of the vehicle is just illogical and improbable and did not need to be considered by the jury or believed by the jury. Not considered, but believed. Also inconsistent with his story that he only had the car for 30 minutes, yet he was driving it around for hours drinking. Yes, that is absolutely true, which goes to his credibility and the jury, again, was not required to believe his story. So under the sufficiency of the evidence in the cases cited by the people, Pintos, and that the evidence has to be viewed in the light most favorable to the prosecution, we believe that it was sufficient. While defendant attempts to rely on, even if there was DNA, which there was in this case, we haven't proven the temporal connection. There is no case that says we have to prove when the DNA was deposited. There is a reasonable inference in this case that he possessed that gun and he is connected at every stage. Therefore, it is not speculation, but a reasonable inference. Moving on, unless there are questions about the sufficiency, I will address the second issue, which is the jury question. The issue here was, and I think the court has it, one of the justices, and I apologize, I can't remember which one's asked. The question was not about the date of arrest. It was about the time of the arrest. I think it is important to note that it was around midnight. So they're trying to figure out, was he possessing it immediately before when the officer stopped him? Was he possessing it at the time he was taken into custody? It is a fair interpretation of that the question. It is only after that, that counsel then imposes an objection. And under Hartfield, and the plain language of 451C, you only get to review a jury substantial defect, meaning there's an actual defect in the jury instructions, which the people argue 3.01 is a proper statement of the law. And you only review it if justice so requires. That's the plain language of 451C. Here we have an accurate statement of law. We have the defense counsel not choosing to participate in drafting or creating a proper answer or a different answer to the jury. And therefore, we do not believe that consideration under 451C is appropriate. There is an illusion or a inference of because he said, yes, this answers their question of invited error, but we understand that he did later object, although it was a general objection and not a specific one. So I would direct the court to the plain language of 451C. In addition, we have the 3.01 says that the jury first have to find that he committed the offense. The definitions instructions and the issues instructions both have the time component in those instructions. And if Hurtfield teaches us nothing else, it teaches us that we have to take the instructions all together. We don't get to isolate 3.01 and say, oh, that's now in conflict. 3.01 specifically says, if you find he committed the offense, and in this particular case, the definitions and issues instructions specifically were accurate and they included that temporal requirement. I would like to point out that counsel or that the defendant relies on the fact that of the stipulation, which was put in place to protect the defendant from having the entire files go back. The court took judicial notice of 08CF558 and 06CF1836, which were the defendant's prior conviction showing that he had a class two drug offense where the conviction entered on September 16th, 08, and a class one drug offense from July 3rd, 2007. That covers the entire statute of limitations. The prosecution and the defense agree when the judge took judicial notice of those files, which give that time frame that is apparently so important that those files would not go back to the jury. Not an improper thing and not an improper ruling or a decision or an agreement by the people or the defendant, but now the defendant seeks to play gotcha with, I don't know when these convictions or the jury couldn't have known when these convictions occurred because the files didn't go back to them. That's just not fairness under the law. I'm sorry, was there a question? My understanding was on those convictions, the court took judicial notice of the convictions, and they're from 2007 and 2008. Yes. Is that correct? Was the jury aware of the date of the convictions? The stipulation did not include that information. No. The parties agreed that the files that the court took judicial notice of would not go back to the jury room. Certainly, that would not be improper because it would include information that would be prejudicial to the defendant. And so, the state recognizing that, the defendant recognizing that, the court recognizing that, they sent a stipulation back instead. So, we just think that it is unfair to now say, oh, we only stipulated that he was convicted on that October 7th date when it is clear from the evidence that the court took judicial notice of that those convictions were from 2007 and 2008. We do think that Pollack is differentiated because it was 20 years before Hurtfield, and Hurtfield does talk about how whether the instructions are actually conflicting. And again, when taken as a whole, we do not believe they are conflicting here. I do want to, I only have a minute left, and I want to touch briefly on Issue 3. That is an issue that has been decided by the 3rd, the 4th District, and there's also Spears out of the 2nd District. And I have not found a case that the 5th District has weighed in on it. We strongly ask the court to consider the reasoning of the 4th District in Brown. They specifically talk about Spears and Foster, the 3rd District and the 2nd District case. And as to Spears, they differentiate it because Spears looked at it as a procedural law change, which the statute on statute treats differently and retroactively, as identified in Hunter, where it looked at both a retroactive procedural and a sentencing. And so, I cannot, in the limited time, give you a better explanation or differentiation than Brown did. So, the people would just ask that you look at the reasoning in Brown and accept that. Unless there's any other questions, that is all I had, and my time is out. Any other questions from the Justices? No questions. No questions. Thank you, Your Honors. And, I'm focusing on the phrase time of arrest in the jury's note. This is the ball in this case. This is about instructing the jury in two different ways. On the one hand, saying the possession has to happen after the qualifying priors. And then, on the other hand, telling the jury that the date of the possession is immaterial. That is the crux of the problem here. No one knows exactly what the jury meant by their note, and we can't read into that. But what we do know is what the court told the jury. And that is conflicting. And under Hartfield, it talks about, yeah, we have to look at the instructions as a whole. And when we have conflicting instructions, it is second-pronged plain error because we do not know whether the jury paid attention to the armed habitual criminal instructions or the IPI 3.01. And in this case, yeah, IPI 3.01, it was accurately given to the jury. This is an IPI. There's nothing wrong with it. The problem is it doesn't work in a case like armed habitual criminal where there's a sequence. It worked. It's different. Armed habitual criminal is different from simple possession or UUW because it involves a sequence. The state has to establish the possession occurred after the priors. If the state doesn't establish that, it's not armed habitual criminal. The IPI, it says that the information states that the offense charge was committed on October 7th. If you find the offense charge was committed, the state's not required to prove that it was being committed. It's talking about the actions that make up this offense being completed, the possession, because that's the only thing the state charged occurred on that date. And the jury specifically asked about the timing of the possession. And the only date on the charging document was the charge date of possession. And I wanted to just correct one thing on the facts. Hilson said that he was driving for a couple of hours, not just 30 minutes. And the state also mentioned when she was talking about the first issue that Hilson was repeatedly pulling his hands back in the car. When you look at the video, that's not quite what you see. When the police come up, they order him initially to stay in the car. There's a lot of yelling. He's yelling back at the police saying something, which I couldn't hear when I watched the video, but the police, you can certainly hear them yelling at him. And initially they say, stay in the car, stay in the car. They have him put his hands out the driver's side window, which I submit is pretty awkward. At one point, you do see a hand start to come in and they immediately tell him to stick it back out. So he does. There is not enough time with that to have moved the gun, which is the whole point of furtive movements. It's being concerned about the defendant, getting rid of evidence, moving evidence, things like that. You cannot say that him pulling this hand a little bit was him moving the gun or an attempt to do so. His hands were out the window. So you're saying in the two hours, he couldn't put it under the seat. Is that what you're saying? Because his hands were out the window for about 10 minutes or a couple minutes? No, Your Honor, that's not what I'm saying. I was referring to counsel's argument that he made some furtive movements because his hand was moving back in. But we don't know what happened during the couple of hours he was driving. There's no evidence about that except what Mr. Hilson testified to himself, which was that he was drinking and driving around with his friend. But the furtive movements thing is at the time when the police are there and what you can see on the video from the body cam. And you just can't see him moving his hands enough to move the gun at that point. If there are any other further questions? Well, what I'm getting at, he could have moved it under the seat at any time that he had the car. Yeah. I mean, if he knew about it, again, there's no evidence. I submit that there's no evidence that he knew that the gun was underneath it. It wasn't his car. Like in Bailey, it wasn't his car. But he had handled the gun before. So that's what you're saying. You don't know what he handled. He handled the gun. You're trying to say that maybe he handled the gun before the other arrests to make him a felon. Possibly. I mean, for the second issue in the prejudice, yeah, we don't know when the DNA was deposited on the gun. There's no evidence how long the DNA stands on the gun. There's just no evidence about that, your honor. For these reasons, again, I ask the court to remand for a new trial or alternatively to vacate his conviction under the first argument. Thank you. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course, unless Justice Vaughn or Justice Welch has any other questions. No questions. No other questions. Thank you. Okay. Thank you.